UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN HUMPHRIES                                                    CIVIL ACTION

VERSUS                                                            No. 13-5426

ONEBEACON AMERICA INSURANCE                                       SECTION I
COMPANY ET AL.

ORDER AND REASONS

Before the Court is a motion[1] to remand filed by plaintiff. Defendant, Elliott Company, ("Elliott") has filed an opposition,[2] to which plaintiff filed a reply.[3] For the following reasons, the motion is **DENIED**.

BACKGROUND

Plaintiff filed this lawsuit against more than a dozen companies, including E. I. du Pont de Nemours and Company ("DuPont"),[4] after being diagnosed with asbestos-related mesothelioma on or about June 3, 2013.[5] The complaint alleges that, during the course of his employment with DuPont and his subsequent employment with DuPont's co-defendant, Kaiser Aluminum & Chemical Company ("Kaiser"),[6] "John Humphries was exposed to dangerously high levels of toxic substances, including asbestos, and asbestos-containing products sold, manufactured, and/or distributed by" the defendants.[7]

---

[1] R. Doc. No. 365.
[2] R. Doc. No. 370.
[3] R. Doc. No. 374.
[4] R. Doc. No. 1-2, at 1-2.
[5] R. Doc. No. 1-2, at 3.
[6] After ending his employment with DuPont, plaintiff alleges that he moved to Louisiana and worked for Kaiser, where his exposure to asbestos continued until 1989. R. Doc. No. 1-2, at 2.
[7] R. Doc. No. 1-2, at 2.

Plaintiff alleges that part of his exposure is attributable to Elliott as it occurred while he was working as a turbine operator, and Elliott sold asbestos-containing turbines to DuPont for use at the Savannah River facility which DuPont operated in South Carolina.[8] The Savannah River plant was used by the Atomic Energy Commission ("AEC") for the manufacture of nuclear materials.[9] Elliott asserts that it is entitled to a government contractor defense,[10] and that jurisdiction is proper pursuant to 28 U.S.C. § 1442, the federal officer removal statute.[11]

This Court previously remanded the case after DuPont, the only defendant to file a notice of removal, settled with plaintiff.[12] The U.S. Court of Appeals for the Fifth Circuit reversed that order, holding that Elliott had not waived its right to a federal forum pursuant to § 1442 merely by failing to join in the notice of removal.[13] Plaintiff then filed the instant motion to remand based on Elliott's alleged failure to comply with § 1442's requirements.

## STANDARD OF LAW

The Court "initially note[s] that when faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy."[14] *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). Section 1442 provides that a

---

[8] *See* R. Doc. No. 1-2, at 73.
[9] *See, e.g.*, R. Doc. No. 365-5, at 2.
[10] R. Doc. No. 13, at 7.
[11] *See* R. Doc. No. 370.
[12] R. Doc. No. 339.
[13] *See Humphries v. Elliott Co.*, No. 14-30182, 2014 WL 3633197 (5th Cir. July 23, 2014); *see also* R. Doc. No. 366.
[14] Elliott contends that the Fifth Circuit ruled that this Court has jurisdiction over the above-captioned matter and that it need not entertain the motion to remand. R. Doc. No. 370, at 1, 17. The Court disagrees. *See Humphries*, 2014 WL 3633197, at *3 ("The parties debate whether Elliott's answer asserts a 'colorable' government contractor defense supporting federal jurisdiction. Whatever the merits of this debate, it is undisputed that the district court never addressed the substance of Elliott's defense because of its (now set aside) conclusion that the defense had to be raised in a notice of removal or 'joinder.'"); *see also* R. Doc. No. 366. In any event, because the Court finds that remand is not warranted, the issue is irrelevant.

civil action commenced in a state court against any agency or officer of the United States or any person acting under that officer may be removed to federal court. 28 U.S.C. § 1442. A defendant may remove a case pursuant to § 1442 if: (1) the defendant is a "person," (2) the defendant acted under the direction of a federal officer, and (3) the defendant raises a colorable federal defense. *Winters*, 149 F.3d at 397; *see also Williams v. Todd Shipyards Corp.*, No. 97-20442, 1998 WL 526612, at *2 (5th Cir. July 21, 1998).

Regarding the first prong, corporations are considered "persons" for purposes of removal under § 1442. *Winters*, 149 F.3d at 398. Plaintiff could not and does not dispute that Elliott is a "person" for the purposes of § 1442, as it is a corporation. *See Winters*, 149 F.3d at 398.

In order to satisfy the second prong, a defendant must have "acted pursuant to a federal officer's directions and a causal nexus [must] exist[] between the defendants' actions under color of federal office and the plaintiff's claims." *Id.* (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). "That nexus is established by the federal officer's direct and detailed control over the defendant. If a corporation only establishes that the acts occurred under the general auspices of federal direction, however, then it is not entitled to § 1442(a)(1) removal." *Green v. Aetna U.S. Healthcare, Inc.*, No. 00-1292, 2000 WL 1229226, at *1 (N.D. Cal. Aug. 18, 2000) (citations omitted). "[T]he [U.S. Supreme] Court has clarified that the right to removal is not unbounded, and only arises when 'a federal interest in the matter' exists." *Winters*, 149 F.3d at 398.

In order to satisfy the third prong, a defendant "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." *Id.* at 400. "The officer need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407.

## ANALYSIS

### A. Color of Federal Office

The second prong of *Winters* requires Elliott to show that it "acted pursuant to a federal officer's directions" and that "a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims." *Winters*, 149 F.3d at 398. The Fifth Circuit has "noted the Supreme Court's admonishment that the statute's 'color of federal office' requirement is neither 'limited' nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying rationale." *Id.* (quoting *Murray v. Murray*, 621 F.2d 103, 107 (5th Cir. 1980)).

Plaintiff's briefing extensively discusses his failure-to-warn claims. However, the Court need not address whether such claims meet this prong, which is a troubling question for federal district courts;[15] as long as removal is proper as to one claim, the entire case is removable pursuant to § 1442. *Najolia v. Northrop Grumman Ship Sys., Inc.*, 883 F. Supp. 2d 646, 656 (E.D. La. 2012) (Barbier, J.) ("[E]ven if the failure-to-warn claim does not provide independent grounds for removal, the action is removable for the independent reason that, as the Court has already stated, the 'acting under' prong is satisfied as to the design-defect claim."); *see Mesa v. California*, 489 U.S. 121, 129 (1989); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996); *Murphy v. Kodz*, 351 F.2d 163, 166 (9th Cir. 1965). For the following reasons and for the purpose of deciding the motion to remand, it is clear that Elliott has made a sufficient showing that it acted under the color of a federal office with respect to design defect claims.[16]

---

[15] "[E]ven when courts are presented with . . . substantially the same record and legal arguments, they have come to opposite conclusions." *Leite v. Crane Co.*, No. 11-636, 2012 WL 1982535, at *4 (D. Haw. May 31, 2012) (collecting cases).

[16] *See, e.g.*, R. Doc. Nos. 1-5, 1-6.

The U.S. Supreme Court has commented: "The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. . . . Moreover, at least arguably, [contractors] perform[] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153-54 (2007). "In the context of *Winters*, for example, Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product [Agent Orange] that it used to help conduct a war." *Id.* at 153-54.

Plaintiff asserts that "Elliott cannot cite this Court to any government specifications it was required to follow," such as Navy MilSpecs.[17] However, Michael Guinta, Elliott's designee and an area sales manager for the region of North America,[18] testified that asbestos insulating blankets had to be "special ordered"[19] for the turbines at issue "[a]t the direction of our customer requirements," as evidenced by the purchase/requisition orders.[20] Guinta also testified that it was his understanding that, at the time, Elliott's standard was to use "Gimco" or "Banrock" mineral wool for turbine insulation, and that "when you see something like a purchase order reference, that would generally give you the meaning that the customer had described something different than what Elliott had to offer."[21] Although plaintiff derides Guinta's "self-serving, speculative testimony,"[22] plaintiff has offered nothing to directly rebut Guinta's statements.

---

[17] R. Doc. No. 365-1, at 6; *see also* R. Doc. No. 365-1, at 11.
[18] R. Doc. No. 365-11, at 3.
[19] R. Doc. No. 365-11, at 8, 10.
[20] R. Doc. No. 365-11, at 18. The deposition transcript is unclear as to whether the purchase and requisition orders are the same document or different documents, but Guinta's deposition makes clear that such orders are components of the "shop orders" that relate to each piece of equipment sold by Elliott.
[21] R. Doc. No. 365-11.
[22] R. Doc. No. 365-1, at 10.

Plaintiff makes much of Brian Schudiske's characterization of Elliott's shop orders as jealously guarded trade secret information, as well as his statement that "[t]he turbines and compressors at issue in the shop orders produced here are identical to turbines and compressors Elliott regularly services today."[23] According to plaintiff, this proves that the turbines were not designed under the detailed control of the federal government.[24] The turbines at issue, however, were not "off the shelf" items, but rather were made-to-order pieces of industrial machinery made to exacting specifications. *See Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 437 (5th Cir. 2000) ("[T]he government procurement officer did not order [the equipment] in the same way he would order light bulbs, but rather, government engineers approved the inclusion of these specific components into a complex piece of equipment."); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. 11-67281, 2012 WL 3155180, at *6 (E.D. Pa. Aug. 2, 2012). Customers apparently could and did make special requests regarding certain components. Moreover even if much of Elliott's turbine design has been unchanged since the 1950s, that fact is irrelevant to whether Elliott was directed to provide and install asbestos blankets in the two turbines at issue.

Guinta testified that Elliott's standard was to use mineral wool insulation on turbines. According to Guinta, the use of asbestos blanket insulation for the Savannah River turbines reflects the specifications required by DuPont, which purchased the turbines for the facility that it operated on behalf of the AEC.

The Court is mindful that "the statute's 'color of federal office' requirement is neither 'limited' nor 'narrow,' but should be afforded a broad reading." *Winters*, 149 F.3d at 398. Accordingly, the Court finds for the purpose of this motion that Elliott "acted pursuant to a

---

[23] R. Doc. No. 369-2, at 3; *see also* R. Doc. No. 365-1, at 10 ("Also, Brian Schudiske's testimony is directly contrary to Mr. Guinta's speculation.").

[24] *See* R. Doc. No. 365-1, at 4 ("It is either Elliott's design or the government's design. It cannot be both.").

6

federal officer's directions" when it included asbestos insulating blankets with its turbines. *See id.*

Finally, the asbestos blankets have a clear causal nexus to plaintiff's claims because he has testified that he was exposed to asbestos at Savannah River while working as a turbine operator in the vicinity of Elliott's turbines.[25] Accordingly, the required causal nexus is established. *See id.*

### B.     Colorable Federal Defense

Elliott asserts that it is entitled to a government contractor defense with respect to plaintiff's design-defect claims.[26] "To invoke the military contractor defense, the defendants must prove that: (1) the government approved reasonably precise specifications for the item; (2) the item conformed to those specifications; and (3) the contractor warned the government about the dangers from the use of the item that were known to the contractor but not to the government."[27] *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). "The government contractor defense in *Boyle*, '[s]tripped to its essentials,' is fundamentally a claim that '[t]he Government made me do it.'" *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) (alterations in original) (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir.

---

[25] *See* R. Doc. No. 365-8, at 9; R. Doc. No. 365-9, at 11-13, 21-22.
[26] R. Doc. No. 13, at 7.
[27] Plaintiff cites *Morgan v. Great Southern Dredging, Inc.*, No. 11-2461, 2012 WL 4564688 (E.D. La. Sept. 30, 2012), for the proposition that Elliott must additionally show that it contracted directly with the government, and that it was not merely a subcontractor. R. Doc. No. 365-1, at 2-3. *Morgan* relies on *Winters* for this assertion, but the Court does not perceive that requirement anywhere within *Winters*. *See Winters*, 149 F.3d at 398-401; *see also LaForge v. ECC Operating Servs.*, No. 07-253, 2010 WL 497657, at *2 (E.D. La. Feb. 5, 2010) (Africk, J.) ("Because the principles underlying the government contractor defense support extending the defense to government subcontractors, the Court finds that [defendant]'s status as a subcontractor does not preclude it from relying on government contractor immunity as an affirmative defense.").

1990)). "The only analysis necessary to determine the application and scope of government contractor immunity is the three-step *Boyle* test."[28] *Id.* at 461.

First, "[t]he 'reasonably precise' standard is satisfied as long as the specifications address, in reasonable detail, the product design feature[] alleged to be defective." *Kerstetter*, 210 F.3d at 438. "[T]he mere fact that a corporation participates in a regulated industry is insufficient to support removal, absent a showing that the particular conduct is closely linked to detailed and specific regulations." *Williams*, 1998 WL 526612, at *4. For the reasons discussed above in connection with the "acting under" requirement, Elliott has made a sufficient showing that it was acting pursuant to a "reasonably precise" specification attributable to the government regarding the type of insulating blankets to be used. *See Kerstetter*, 210 F.3d at 438.

Second, Elliott must show that "the item conformed to those specifications." *Miller*, 275 F.3d at 419. Plaintiff's own testimony is that asbestos insulating blankets were used on the Elliott turbine.[29] Accordingly, the Court is satisfied that the turbine conformed to that specification.

Third, Elliott must demonstrate that it "inform[ed] the Government of any dangers in the use of equipment that [were] known to [it], but not known to the Government." *Williams*, 1998 WL 526612, at *4 (citing *Boyle*, 487 U.S. at 512). Plaintiff asserts that "Elliott has not submitted anything regarding whether or not the government had more knowledge about the hazards of asbestos turbines than they did."[30] However, according to Thomas Brown's uncontroverted testimony, Elliott did not have any awareness of the hazards of asbestos until 1972 at the earliest, long after the turbines were installed at Savannah River.[31]

---

[28] Accordingly, plaintiff's arguments relative to the need for a "unique federal interest" and a conflict between state and federal law are irrelevant. R. Doc. No. 365-1, at 18-21.
[29] *See* R. Doc. No. 365-8, at 9; R. Doc. No. 365-9, at 11-13, 21-22.
[30] R. Doc. No. 365-1, at 18.
[31] R. Doc. No. 370-8, at 4.

Based on the present record, the Court cannot conclude that Elliott knew of any asbestos-related dangers of which the government did not know during the time period at issue. Accordingly, there was no information that Elliott withheld, and nothing about which it was required to warn the government. *See Miller*, 275 F.3d at 422 ("After *Boyle,* a government contractor is *only* responsible for warning the government of dangers about which it has *actual* knowledge.") (internal quotation marks omitted).

In sum, the Court finds that Elliott has made a colorable claim to each of the three prongs of the government contractor defense. *See id.* at 419.

## CONCLUSION

For the foregoing reasons, the Court finds that Elliott is entitled to a federal forum pursuant to pursuant to 28 U.S.C. § 1442. Accordingly,

**IT IS ORDERED** that the motion to remand is **DENIED**.

New Orleans, Louisiana, September 23, 2014.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**